# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: <br><br> PARAGON INDUSTRIES, INC., <br><br> Debtor. | Case No. 25-80433-PRT <br> Chapter 11 |

### DEBTOR'S APPLICATION PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a) AND 328(a) FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF DAVID R. PAYNE AS CHIEF RESTRUCTURING OFFICER FOR DEBTOR IN POSSESSION, EFFECTIVE AS OF THE DATE OF PETITION

Debtor, Paragon Industries, Inc. (the "Debtor"), by and through its undersigned counsel, respectfully files this *Debtor's Application Pursuant to Bankruptcy Code Sections 327(a) and 328(a) for an Order Authorizing the Employment and Retention of David R. Payne as Chief Restructuring Officer for Debtor in Possession, Effective as of the Petition Date* (the "Application"). In support thereof, the Debtor would show the Court as follows:

### JURISDICTION AND STATUTORY AUTHORITY

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. The statutory predicates for the relief requested are sections 327 and 328 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Oklahoma.

2145420

**BACKGROUND**

1. On May 21, 2025 (the "Petition Date"), the Debtor filed a voluntary petition with this Court pursuant to Chapter 11 of the Bankruptcy Code.

2. Pursuant to Bankruptcy Code sections 1107 and 1108, the Debtor has retained possession of its assets as a debtor in possession and is continuing to operate its business.

3. No trustee, examiner, or committee has been appointed in this Chapter 11 case.

4. The factual background regarding the Debtor, including its business operations and the events leading to this Chapter 11 case, is set forth in detail in the Affidavit in Support of First Day Motions and fully incorporated herein by reference.

**RELIEF REQUESTED AND BRIEF IN SUPPORT**

5. Pursuant to Bankruptcy Code sections 327(a) and 328(a) and Bankruptcy Rule 2014, the Debtor requests authority to employ and retain David R. Payne CPA/ABV, CIRA/CDBV, CTP ASA of D. R. Payne & Associates, Inc. as its Chief Restructuring Officer, effective as of the Petition Date, in connection with the Debtor's Chapter 11 case. In support of the Application, the Debtor submits the Affidavit of David R. Payne in Support of Application Pursuant to Bankruptcy Code Sections 327(a) and 328(a) for an Order Authorizing the Employment and Retention of David R. Payne as Chief Restructuring Officer for Debtor in Possession, Effective as of the Petition Date (the "Affidavit"), which is attached hereto as **Exhibit A**. The Debtor incorporates by reference the facts set forth in the Affidavit as though fully set forth herein.

6. Bankruptcy Code section 327(a) authorizes a debtor in possession, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate,

2

Case 25-80433    Doc 34    Filed 05/23/25    Entered 05/23/25 11:40:16    Desc Main
Document    Page 2 of 18

and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). A "disinterested person" is defined as a person that:

> (A) is not a creditor, an equity security holder, or an insider;
>
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14). Bankruptcy Code section 328(a) provides for the employment of professional persons "on any reasonable terms and conditions of employment, including on a retainer . . . ." 11 U.S.C. § 328(a).

7. Given the size and complexity of the Debtor's business, the Debtor has determined that the services of a financial advisor to serve as chief restructuring officer for the Debtor will provide considerable benefit to the Debtor's ability to navigate the bankruptcy process while ensuring its business experiences as little disruption as possible.

8. Mr. Payne is well qualified to serve as CRO. Mr. Payne has over 40 years of accounting, consulting, and valuation experience in both public and private industry. Mr. Payne has previously served as CRO in other Chapter 11 proceedings.

9. The parties have entered into an Engagement Agreement, which governs the relationship between the Debtor and Mr. Payne. The terms and conditions of the Engagement Agreement were negotiated between the Debtor and Mr. Payne and reflect the parties' mutual agreement as to the material efforts that will be required in this engagement. A copy of the Engagement Agreement is attached hereto as **Exhibit B**.

10. Under the Engagement Agreement, Mr. Payne will provide the following services:

3

i. Direction, oversight and review of preparation of initial disclosures.

ii. Assistance with preparation of content and data to include in first day motions.

iii. Assistance with the business terms to include in a bidding procedures motion to consummate a sale pursuant to Bankruptcy Code section 363.

iv. Evaluation, confirmation and/or development of timeline and milestones for implementation and consummation of a plan of reorganization including a competitive going concern sale transaction.

v. Development of a 13-week budget and updating of same.

vi. Review, approval, and submission of weekly reports for the immediately preceding week's revenues and expenses to stakeholders.

vii. Review, approval and submission of periodic written reports detailing Debtor's progress and performance to meet and achieve the milestones and objectives in this case.

viii. Preparation of the business financial and operating data and information necessary for filing motions.

ix. Conduct ongoing, routine communications with the Debtor's lenders and other creditors including periodic reviews of the Debtor's performance and progress towards objectives in this case.

x. Provide such other similar services as may be necessary to maximize enterprise value and comply with the financial and business requirements of the Bankruptcy Code.

xi. Such other services as requested or directed by the Debtor and agreed to by the Mr. Payne.

11. Pursuant to the Engagement Agreement, the Debtor has agreed to compensate Mr. Payne and his support staff on an hourly basis in accordance with the following rates:

| | |
|---|---|
| David R. Payne, CRO | $550 |
| Assistant to CRO — Manager | $425-475 |
| Assistant to CRO — Consultant Staff | $195-375 |

Mr. Payne was also provided with a $50,000.00 retainer from the Wachob Trust, which shall be fully earned upon termination of the Engagement Agreement. Mr. Payne is also entitled to reimbursement for reasonable out-of-pocket expenses incurred in providing services. The Debtor believes that the proposed rates are reasonable.

12. The Debtor understands that Mr. Payne intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines established by the United States Trustee, and further orders of this Court for all services incurred after the Petition Date until this case is closed.

13. Based on the Affidavit, the Debtor believes Mr. Payne is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14) and modified by Bankruptcy Code section 1107(b). Mr. Payne does not represent and does not hold any interest adverse to the Debtor's estate or its creditors in the matters upon which Mr. Payne is to be engaged, other than as set forth in the Affidavit.

## **CONCLUSION**

WHEREFORE, for the reasons stated herein, the Debtor respectfully requests that this Court enter an order (1) approving the Debtor's employment of David R. Payne CPA/ABV, CIRA/CDBV, CTP ASA of D. R. Payne & Associates, Inc. as its Chief Restructuring Officer, effective as of the Petition Date; and (2) granting such other and further relief as the Court deems appropriate.

5

Case 25-80433    Doc 34    Filed 05/23/25    Entered 05/23/25 11:40:16    Desc Main
Document    Page 5 of 18

Respectfully submitted,

*/s/ Clayton D. Ketter*
Clayton D. Ketter, OBA No. 30611
Jason A. Sansone, OBA No. 30913
PHILLIPS MURRAH P.C.
424 N.W. 10th St., Suite 300
Oklahoma City, OK 73103
(405) 235-4100 - telephone
(405) 235-4133 - facsimile
cdketter@phillipsmurrah.com
jasansone@phillipsmurrah.com
**Proposed Attorneys for Debtor**

6

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

In re:

PARAGON INDUSTRIES, INC.,

    Debtor.

Case No. 25-80433-PRT

Chapter 11

### AFFIDAVIT OF DAVID R. PAYNE IN SUPPORT OF APPLICATION PURSUANT TO BANKRUPTCY CODE SECTIONS 327(A) AND 328(A) FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF DAVID R. PAYNE AS CHIEF RESTRUCTURING OFFICER FOR DEBTOR IN POSSESSION, EFFECTIVE AS OF THE PETITION DATE

STATE OF OKLAHOMA    )
                              ) SS:
COUNTY OF OKLAHOMA  )

I, David R. Payne, being first duly sworn, on oath, state:

1. I am a managing director of D. R. Payne & Associates, Inc. ("DRPA"), which maintains an office at 119 North Robinson, Suite 400, Oklahoma City, Oklahoma 7310, and I am authorized to execute this affidavit (the "Affidavit").

2. I am familiar with the matters set forth herein and make this Affidavit pursuant to Federal Rules of Bankruptcy Procedure 2014 and 2016 and Bankruptcy Code section 329 in support of the *Debtor's Application Pursuant to Bankruptcy Code Sections 327(a) and 328(a) for an Order Authorizing the Employment and Retention of David R. Payne as Chief Restructuring Officer for Debtor in Possession, Effective as of the Petition Date* (the "Application").

3. DRPA is a subsidiary of Marshall & Stevens ("M+S"), a national valuation restructuring advisory and forensic firm founded in 1932 with eleven (11) offices across the United States.

4. Except as specifically set forth herein, neither I, DRPA, M+S, nor any person with whom I am associated in our restructuring advisory service firm, to the best of my knowledge,

2144899
Case 25-80433   Doc 34   Filed 05/23/25   Entered 05/23/25 11:40:16   Desc Main
Document   Page 8 of 18

represents any entity other than the debtor in the above-captioned Chapter 11 case (the "<u>Debtor</u>") in connection with the Debtor's Chapter 11 case. In addition, except as specifically set forth herein, to the best of my knowledge, neither I, DRPA, M+S, nor any employees thereof is an insider of the Debtor, nor has any connection with the Debtor.

5. Neither I, DRPA, M+S, nor any employees thereof, insofar as I have been able to ascertain, holds or represents any interest adverse to the estate with respect to the matters upon which DRPA is to be engaged.

6. As part of its diverse practice, I, DRPA and M+S appears in numerous cases and proceedings, and participates in transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who represent claimants and parties-in-interest. Based on my and DRPA's current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the estate in matters upon which DRPA is to be employed, and none are in connection with this case.

7. DRPA, M+S and its employees: (i) are not creditors, equity security holders, or insiders of the Debtor or its bankruptcy estate; (ii) are not and were not investment bankers for any outstanding security of the Debtor; (iii) have not been, within three years before the date of the filing of the petition, investment bankers for a security of the Debtor, or attorneys for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtor; (iv) are and were not, within two years before the date of the filing of the petition, directors, officers, or employees of the Debtor or of an investment banker specified in subparagraph (ii) or (iii) above; and (v) do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection

with, or interest in, the Debtor or an investment banker specified in subparagraph (ii) or (iii) above, or for any other reason, except as specifically disclosed and described herein.

8. DRPA has previously been retained and/or is currently retained to work in unrelated contested matters by certain law firms representing parties in interest in this case including Phillips Murrah (Debtor) and Crowe & Dunlevy (Byline Bank). DRPA has also been retained by opposing law firms to the two aforementioned firms. None of these matters are related to this bankruptcy proceeding.

9. Based upon the aforementioned disclosures, I believe I, DRPA and M+S are each a "disinterested person" qualified and competent to act as CRO on behalf of the estate within the meaning of Bankruptcy Code sections 101 and 327.

10. Of course, if I, DRPA or M+S become aware of a situation in which we believe a potential conflict of interest relates to our services to the Debtor, DRPA will promptly take such action as is necessary, after consultation with Debtor to disclose and/or eliminate such potential conflict of interest.

11. Subject to the Court's approval, DRPA will charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date such services are rendered, subject to Bankruptcy Code sections 328(a) and 330. The current hourly rates charged by DRPA for professionals and paralegals employed in its offices who will have primary responsibility for this matter are provided below:

| | |
|---|---|
| David R. Payne, CRO | $550 |
| Assistant to CRO — Manager | $425-475 |
| Assistant to CRO — Consultant Staff | $195-375 |

3

DRPA intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with all applicable statutes and rules for all services incurred after the petition date until this case is closed.

12. No promises have been received by DRPA as to compensation or payment in connection with this case other than in accordance with the provisions of the Bankruptcy Code. DRAPA has no agreement with any other entity to share with such entity any compensation received by DRPA in connection with this Chapter 11 case.

FURTHER AFFIANT SAYETH NOT.

*David R Payne*
David R. Payne

Subscribed and sworn to before me this 23rd day of May, 2025.

Notary Public,
Commission No. 06006709

My Commission Expires:

7/12/26
[SEAL]

[Notary Seal: ROZETA A BISHOP, NOTARY PUBLIC, STATE OF OKLAHOMA, # 06006709, EXP. 07/12/26]

# EXHIBIT B

May 14, 2025

Mr. Derek Wachob
Chief Executive Officer
Paragon Industries, Inc.
Paragon Intermediate Holdings, Inc.
Paragon Holdco, Inc.
3378 W. Highway 117
Sapulpa, OK 74066

Dear Mr. Wachob:

This will confirm that David R. Payne ("**DRP**") of D. R. Payne & Associates, Inc. ("**DRPA**") has been engaged by Paragon Industries, Inc., Paragon Intermediate Holdings, Inc. and Paragon Holdco, Inc. ("**Paragon**" or "**Debtor**"), for the purpose of providing Paragon with services to fulfill the position of Chief Restructuring Officer ("**CRO**"). Specifically, DRP will dedicate the necessary time including utilization of any support staff to assist DRP in carrying out the duties of CRO.

## Section 1 – Contract Chief Restructuring Officer Services

Upon approval and ratification of this retention agreement by the Debtor's Board of Directors or other responsible party who can elect officers ("**Board**") and upon any subsequent application, notice and entry of an order in the bankruptcy case, David R. Payne will commence to serve as CRO. The CRO will report directly to the chief executive officer and/or the Board ("**Debtor Representatives**"). The CRO shall serve as a contract employee elected to serve as an officer of the Debtor.

At the discretion of David R. Payne, certain personnel ("**Additional Personnel**") of DRPA may assist DRP in the performance of his duties as set forth below. Such Additional Personnel shall be recognized by Debtor Representatives as an extension of the office and functions of the CRO. The support services of the Additional Personnel shall be a service arrangement solely between DRP and DRPA. DRPA shall have no service agreement with the Debtor and will only assist DRP as requested by DRP. DRP will include the costs of DRPA personnel at standard hourly rates in the CRO billings. DRPA shall not be considered a separate professional as defined by Bankruptcy Code Section 327. The court's approval of DRP to serve as CRO shall incorporate approval of DRPA personal assisting DRP in his duties as CRO.

Specifically, DRP's work will involve directing, overseeing and managing the Debtor's

participation with counsel and/or other professionals in the following areas:

1. Direction, oversight and review of preparation of initial disclosures including the Schedules of Assets and Liabilities, SOFA, Initial Report, Creditor matrix, list of largest creditors, etc. (collectively the "**Compliance Reports**"). DRP will utilize the bankruptcy compliant Best Case Software to prepare the Compliance Reports. (See **Exhibit A** list of Compliance Reports.) This service will include reconciliation procedures to the Debtor's general ledger and other books/records.

2. Assistance with preparation of content and data to include in First Day Motions.

3. Assistance with the business terms to include in a bidding procedures motion to consummate a sale pursuant to § 363.

4. Evaluation, confirmation and/or development of timeline and milestones for implementation and consummation of the plan of reorganization including a competitive going concern sale transaction (the "**Transaction**"); lead, with the assistance of management, the implementation of the plan of action to consummate a Transaction. Subject to Board approvals, DRP shall participate in the negotiation with prospective counterparties as applicable and execute definitive documentation in connection with the implementation of such Transaction.

5. With access to data and with assistance of the Debtor Representatives, development of a 13-week budget. Such budget will be updated every two weeks to reflect the Debtor's performance against the preceding budget and re-forecasting the budget for the subsequent periods to maintain a rolling 13-week budget.

6. Review, approval and submission of weekly reports for the immediately preceding week's revenues and expenses to stakeholders.

7. Review, approval and submission on the periodic written reports detailing Debtor's progress and performance to meet and achieve the milestones and objectives to achieve a Transaction to the stakeholders.

8. Preparation of the business financial and operating data and information necessary for filing Motions including but not limited to:

    a) Authorization for the Use of Cash Collateral and Granting Pre-Petition Secured Parties Adequate Protection or Alternatively for Entering in to Post Petition Financing Agreement pursuant to § 363 and § 364.
    b) Liquidation Analysis required in § 1129(7)A(ii) for filing and confirming a plan of reorganization.
    c) Feasibility Analysis required pursuant to § 1129(11) required for filing and confirming a plan of reorganization.

9. Conduct ongoing, routine communications with the Debtor's lenders and other creditors including periodic reviews of the Debtor's performance and progress towards achieving a Transaction.

10. Provide such other similar services as may be necessary to maximize enterprise value and comply with the financial and business requirements of 11 U.S.C. Title 11.

11. The CRO shall provide such other services as requested or directed by the Board and agreed to by the CRO.

DRP will work at the direction of the Chief Executive Officer and/or Board. In performing these services, DRP will be relying on the accuracy and reliability of your data, information and other representations that you will make. We call to your attention the fact that these procedures are not intended to be an audit, examination or review of financial statements or information in accordance with generally accepted auditing standards. Accordingly, DRP will not express an opinion on the financial statements or other information.

### Section 2 – Compensation

Paragon shall compensate DRP ("Compensation Amount") upon filing of an application(s) and obtaining entry of an order(s) approving such Compensation Amount at the rate set forth below:

| | |
|---|---|
| David R. Payne, CRO | $550 |
| Assistant to CRO - Manager | $425-475 |
| Assistant to CRO – Consultant Staff | $195-375 |

Paragon shall initially fund a $50,000.00 deposit towards the Compensation Amount. The deposit shall be fully earned upon termination of the agreement.

### Section 3 – Reimbursement of Expenses

DRP will be reimbursed by Paragon for reasonable out-of-pocket expenses incurred in providing the services. DRP shall provide Paragon with adequate supporting details with each expense reimbursement request.

### Section 4 – Termination

This engagement may be terminated by Paragon at any time upon written notice; however, DRP shall be entitled to its compensation earned under Section 2 and to reimbursements of expenses under Section 3, in each case through the date of termination.

**Section 5 – Term**

This engagement shall commence as of the date of this letter and shall continue until the services are completed and/or the formal court supervised Chapter 11 bankruptcy proceeding is substantially complete; provided, however, that the term may be revised by mutual agreement or terminated in accordance with the terms of Section 4.

**Section 6 – Confidentiality**

As part of the engagement, DRP will be obtaining confidential information about the Debtor matters, (the "**Confidential Information**"). All Confidential Information furnished by Paragon to DRP shall not be used for any purpose other than assisting in the services set forth herein.

Data and information obtained in our engagement or produced in connection with our engagement or otherwise shall be maintained as confidential, except at your written direction or pursuant to third party subpoena or court order. In performing these services, DRP and/or DRPA maintains a professional staff which includes certain contract professionals who provide specialized or technical support in providing our services. All DRPA employees and non-employee contract professionals working under the direction of DRP will also be bound by our confidentiality provisions. DRP shall be responsible for any breach of this Section 6 by any such employees or non-employee contract professionals.

**Section 7 – Potential Claims and Relationships**

We have undertaken a limited inquiry of our records to determine potential conflicts and possible relationships with this engagement. Such potential conflicts and relationships, to the extent they exist, have been communicated to you and you have advised us that these relationships do not preclude our retention. These relationships, if any, will be disclosed to the court in our application to be retained as CRO. However, the very nature, diversity, magnitude, and volume of DRP and/or DRPA's past and present clients and professional relationships, do not allow us to be certain that each and every possible relationship or potential conflict has come to our attention. In the event that additional relationships or potential conflicts come to our attention, we will notify you.

**Section 8 – Limitation of Liability and Indemnification**

DRP shall have no liability to Paragon for any losses sustained or liabilities or other obligations incurred as the result of preparing certain financial disclosures, except as may result from gross negligence or willful misconduct in performing DRP's obligations under the engagement as outlined herein. In addition, DRP shall have no liability to Paragon pursuant to the engagement for any losses sustained or liabilities or other obligations incurred as a result of the acts or omissions pursuant to any requirement to perform due diligence or any other professional service, except as may result from gross negligence or willful misconduct in performing DRP's obligations under the engagement. Further, DRP shall make no representation, warranty or other

Mr. Derek Wachob
May 14, 2025
Page 5 of 5

assurance regarding the assets, liabilities, corporate status, lending structure, capital adequacy or structure of Paragon and the structuring of any transaction.

### Section 9 – Approval by Bankruptcy Court

This engagement letter is subject to approval and entry of an order by the bankruptcy court approving the terms and conditions set forth herein.

**********************

If the terms of our engagement are satisfactory to you, please indicate your acceptance in the appropriate space provided and return the enclosed copy to us.

We look forward to working with you.

Very truly yours,

*David R Payne*

David R. Payne, CTP, CIRA

**ACCEPTED:**

*[signature]*
By: Derek Wachob
Title: Chief Executive Officer

Date: _____5-20-25_____

Exhibit A
Compliance Reports

1. Preparation and compilation of Schedules of Assets and Liabilities for Non-Individuals (Forms 206, et al. and 202) as follows:

    a) Summary of Assets and Liabilities for Non-Individuals (Form 206SUM)
    b) Schedule A/B: Assets - Real and Personal Property
    c) Schedule D: Creditors Who Have Claims Secured by Property
    d) Schedule E/F: Creditors Who Have Unsecured Claims (Priority and Nonpriority)
    e) Schedule G: Executory Contracts and Unexpired Leases
    f) Schedule H: Codebtors
    g) Declaration Under Penalty of Perjury for Non-Individual Debtors (Form 202)

2. Preparation and compilation of the Statement of Financial Affairs for Non-Individual Debtors (Form 207)

3. Preparation and compilation of Creditor Mailing Matrix - List containing the name and address of each entity included or to be included on the Schedules of Assets and Liabilities

4. Preparation and compilation of Corporate Ownership Statement (if required - Bankruptcy Rule 1007-I(a) (l)) or Ownership Statement (Local Rule 1007-1 B)

5. Preparation and compilation of List of Equity Security Holders -Must indicate security class, number and kind of interests registered, name and address of interest holder.

6. Preparation and compilation of List of Creditors Who Have the 30 Largest Unsecured Claims and are Not Insiders (Form 204).

7. Draft of financial and other data to include in Voluntary Petition and first-day court filings.

8. Preparation and compilation of Initial Operating Report and preparation for Initial Debtor Interview.

9. Preparation and compilation of Monthly Operating Reports