## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF OKLAHOMA

In re:

PARAGON INDUSTRIES, INC.

Debtor.

Case No: 25-80433-PRT

Chapter 11

## CTAP, LLC AND SOONER PIPE, L.L.C.'S
## MOTION TO CONFIRM THAT THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(A) IS NOT APPLICABLE TO CERTAIN PROPERTY IN DEBTOR'S POSSESSION, OR IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY AND WAIVER OF THE STAY UNDER 11 U.S.C. § 4001(A)(3)

> **THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 14 DAYS AFTER THE FILING OF THIS MOTION. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

CTAP, LLC and Sooner Pipe, L.L.C. (collectively, "CTAP" or the "Movants"), file this *Motion to Confirm that the Automatic Stay Pursuant to 11 U.S.C. § 362(a) Is Not Applicable to Certain Property in Debtor's Possession, or in the Alternative, for Relief from the Automatic Stay and Waiver of the Stay Under 11 U.S.C. § 4001(a)(3)* (the "Motion") and in support thereof would respectfully show the Court as follows:

### INTRODUCTION

1.      This case presents a straightforward question: Can a debtor manipulate bankruptcy protections to unlawfully retain approximately $70 million in property that belongs to someone else? The answer is no. Yet Debtor Paragon Industries, Inc. ("Debtor" or "Paragon") is doing

1

precisely that under the leadership of its CEO, Derek Wachob. Mr. Wachob's documented pattern of mismanagement, self-dealing, obfuscation, broken promises, and fraudulent conduct renders him unfit to continue with the Debtor. While CTAP is attempting to establish a good working relationship with the Proposed CRO and his team, Mr. Wachob's continued involvement with the Debtor has stifled any progress in this case and the return of CTAP's Property.

2.      In particular, Paragon—under the leadership of Mr. Wachob—is using the automatic stay to wrongfully retain CTAP's Oil Country Tubular Goods ("OCTG"), casing, line pipe, and related products (the "Property"), including both finished/processed and unfinished/unprocessed pipe—assets that belong exclusively to CTAP under clear contractual agreements. Paragon's role was limited to processor, bailee, and lessor, with no ownership interest in the Property. The automatic stay was never intended to protect a debtor's possession of property belonging to third parties. The Debtor's bad faith is starkly illustrated by an inexplicable operational disparity: while historically limiting CTAP to 2-3 shipments of its inventory per day Monday through Wednesday and executing zero shipments since filing, Paragon has somehow shipped 11 truckloads on June 19, 14 shipments on June 20, and scheduled additional shipments for June 21, all containing property Debtor claims for itself, even after Debtor's counsel and the Proposed CRO claimed Debtor did not have the required insurance coverage to make shipments. This dramatic contradiction—where Paragon now far exceeds Debtor's pre-petition capacity—evidences preferential treatment, improper asset diversion, and automatic stay violations that undermine any legitimate reorganization effort and demand immediate corrective action. Additionally, Debtor began demanding CTAP's truck drivers pay cash for wood stripping to hold CTAP's own Property, despite the drivers already possessing needed supplies and this cash demand being completely contrary to industry practice. Moreover, the ultimate recipients and

17251843

accounting of these cash payments remains unknown. This is all happening despite CTAP's repeated offers to provide Debtor—both pre- and post-petition—with personnel, trucks, and related indemnification to speed up recovery of CTAP's *own* Property.

3.      As a major creditor with $70 million in property held by Debtor and claims exceeding $30 million, CTAP has directly experienced Debtor's systematic obstruction of legitimate property rights. Pre-petition, Debtor wrongfully retained CTAP Property, imposed artificial recovery restrictions, repeatedly broke turnover agreements, and threatened asset dissipation.

4.      Post-petition, while CTAP has tried to work constructively with Debtor's counsel and proposed Chief Restructuring Officer David Payne (the "Proposed CRO") toward resolution, Mr. Wachob has undermined these efforts by attempting to breach agreements four separate times, including those approved by this Court's Cash Collateral Order. This conduct demonstrates that current management cannot fulfill the fiduciary duties required of a debtor-in-possession. Notably, as of close of business on June 23, 2025, Debtor has not released a single piece of CTAP property post-petition.

5.      For example, despite the requirement in the Cash Collateral Order that the Debtor "shall not sell or otherwise dispose of any of the property listed on Exhibit B attached hereto, which is property owned or claimed as owned by CTAP, LLC or Sooner Pipe, LLC without the prior authorization of the Court" or CTAP, the following actions have occurred:

- **June 3, 2025:**  During a walkthrough, Debtor, under the direction of Mr. Wachob, attempted to condition expedited retrieval of CTAP's Property on CTAP's abandonment of ownership claims to other disputed pipe— essentially asking CTAP to relinquish legitimate property rights to recover what is already rightfully theirs.

- **June 5, 2025:** CTAP discovered Debtor shipping 14- and 16-inch pipe listed in the Cash Collateral Order's Exhibit B without notice or

3

authorization. Only after CTAP alerted the Proposed CRO and Debtor's counsel was the shipment halted and returned to Paragon's yard.

- **June 12, 2025:** One day after reaching the Scrap Agreement—since much of the scrap left on Debtor's premises likely consists of raw material CTAP has already paid for and Debtor has yet to account for—Debtor began shipping alleged scrap without allowing CTAP inspection. Again, only CTAP's intervention—by alerting the Proposed CRO and Debtor's counsel that shipments were being loaded and leaving Paragon—stopped the unauthorized shipment.

- **June 18, 2025:** Debtor began preparing to ship product whose ownership remained in dispute and that CTAP contends is made from steel coil Debtor has yet to account for. Only after CTAP again alerted the Proposed CRO and counsel was this unauthorized shipment halted. The Debtor also shipped its own pipe, despite claims that no shipments of CTAP pipe were possible because of insurance or other reasons.

- **June 19-21, 2025:** As mentioned above, Debtor made significant shipments of property not claimed by CTAP, well in excess of the arbitrary limits placed on CTAP and at a time when Debtor did not have insurance coverage it claimed prevented shipments to CTAP. Further, Debtor imposed a new requirement on CTAP's truck drivers to pay cash for wood stripping, which is contrary to industry standards and raises questions about who will profit from such an arrangement.

6. The requested relief confirms that the automatic stay does not protect property that never belonged to the Estate, allowing CTAP to recover its Property without interference from protections designed for legitimate bankruptcy purposes.

## **JURISDICTION AND VENUE**

7. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105 and 362 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules

4

4001-1 of the Local Court Rules of the United States Bankruptcy Court for the Eastern District of Oklahoma (the "Local Rules").

## FACTUAL BACKGROUND

**I.     CTAP's Unequivocal Ownership Under Clear Contractual Agreements**

8.      CTAP, LLC is a full-service Oil Country Tubular Goods ("OCTG") provider and midstream distribution company that supplies essential piping, casing, and other tubular products used in oil and gas production and transportation. Sooner Pipe, L.L.C. is also a leading OCTG distributor for the oil and gas industry.

9.      Three unambiguous agreements establish CTAP's unequivocal ownership of the Property: (1) the Rack & Storage Yard Lease Agreement dated September 1, 2021 (the "Lease"),[1] leasing rack space to CTAP for storage of its hot rolled steel coils (raw material), works-in-progress, and finished OCTG, line pipe, and other related products; (2) the Bailment and Consignment Agreement dated October 1, 2021 (the "Bailment Agreement"),[2] governing CTAP's provision of raw material and other related products to Debtor for processing; and (3) the January 20, 2025 Finished Inventory Agreement  (the "Inventory Agreement"),[3] placing clear release obligations on Debtor.

10.      The Lease confirms that CTAP is the sole and exclusive owner of the Property.[4] Under the Bailment Agreement, the Property "shall at all times remain" CTAP's property and "shall not be considered the inventory or property" of Debtor. [5] The Bailment Agreement requires

---

[1] A true and correct copy of the *Lease* is attached hereto as **Exhibit A**.
[2] A true and correct copy of the *Bailment Agreement* is attached hereto as **Exhibit B**.
[3] A true and correct copy of the *Finished Inventory Agreement* is attached hereto as **Exhibit C**.
[4] *See* **Ex. A**.
[5] *See* **Ex. B**; CTAP, LLC is the party to the agreements discussed herein, all parties agreed that property belonging to Sooner Pipe, LLC was kept together in the same areas, using the same

17251843
Case 25-80433    Doc 206    Filed 06/24/25    Entered 06/24/25 11:33:47    Desc Main
Document      Page 5 of 25

Debtor to "keep the PROPERTY separate and distinct from all other items" and return it upon demand.[6] At every point of possession, Debtor served merely as processor, bailee, and lessor with no ownership interest.

11. Mr. Wachob previously testified before this Court that he could "absolutely" differentiate Debtor's property from CTAP's Property.[7] This admission eliminates any argument about commingling or identification difficulties and confirms that Debtor's retention of the Property is, and has been for months, purely obstructive and in bad faith.

## II. The Debtor's Pattern of Misconduct and Property Conversion

12. The Property at issue–OCTG, including casing, line pipe, and related products–is valued at over $70 million and includes: (1) more than $56 million of steel pipe casing, (2) more than $10 million of line pipe, (3) more than $13 million of hot rolled coil, and (4) approximately 14,000 tons of unprocessed material (the "Property").[8] CTAP believes this represents a substantial majority of the OCTG and line pipe in Debtor's possession.

13. Beginning as far back as 2022, CTAP attempted to recover its Property from Debtor but was repeatedly obstructed by systematic delay tactics orchestrated by Mr. Wachob. Originally, the delays were occasioned by Debtor's failure to promptly process CTAP's pipe. As Debtor's financial woes mounted, and despite clear contractual obligations, weekly calls with Paragon personnel, and continued correspondence between CTAP and Mr. Wachob, Debtor frustrated and delayed the release of Property by ignoring CTAP's shipment requests and, after reaching an

---

invoicing system as adopted by CTAP and Paragon under the Bailment Agreement. Sooner Pipe, LLC's Property, likewise, remained property of Sooner Pipe, LLC while in Paragon's possession.
[6] *Id.*
[7] *See* **Exhibit D**, Transcript of Emergency First Day Motions Hearing Before the Honorable Paul R. Thomas, United States Bankruptcy Judge (May 29, 2025) at 81:9-12.
[8] *See* **Exhibit E**, CTAP Inventory Breakdown.

agreement to allow prompt shipment of CTAP's Product, Debtor imposed artificial restrictions, including limiting shipments to three truckloads per day, three days per week—a dramatic reduction from the standard 20-25 truckloads per day, five days per week. Yet, contrary to these artificial constraints imposed on CTAP, Paragon shipped 11 truckloads of property it claimed did not belong to CTAP on June 19, 14 shipments on June 20, and scheduled additional shipments for June 21, even after Debtor's counsel and the Proposed CRO claimed Debtor did not have the required insurance coverage to make shipments—dramatically exceeding the Debtor's pre-petition capacity. This stark contradiction exposes the Debtor's deliberate frustration and delay—under Mr. Wachob's direction—of CTAP's recovery of its own Property, even after CTAP's repeated offers—both pre- and post-petition—to provide personnel, trucks, and indemnification to expedite recovery.[9]

14.    Debtor's pre-petition misconduct extends far beyond its relationship with CTAP, demonstrating a troubling pattern of financial problems and fraud under Mr. Wachob's direction. The pre-petition judgments and pending litigation against Debtor and Mr. Wachob include (i) a judgment of over $10.8 million in favor of Amarillo National Bank for non-payment of a loan, (ii) allegations by Nucor Corp. of over $32 million in unpaid obligations, (iii) allegations by AM/NS Calvert LLC of over $31.5 million in unpaid obligations, and (iv) allegations by Skip and Chad Braver alleging Mr. Wachob owes over $30 million. According to the Bravers' litigation in Florida, Mr. Wachob induced investors to provide over $30 million in funding by misrepresenting Paragon's financial condition and failing to disclose that Paragon was "insolvent and unable to

---

[9] *See* **Exhibit F**, Declaration of Kyle Lamb ¶ 40.

17251843

pay its suppliers."[10] The complaint alleges that Mr. Wachob used these funds, not to improve Paragon's operations, but to pay down existing debts while continuing to accept steel on consignment terms that Paragon could not honor.[11]

15.     Upon information and belief, this pattern of deceptive conduct extended directly to CTAP, as Debtor fraudulently charged CTAP over $4.9 million for steel orders allegedly placed with Big River Steel, a steel supplier based in Arkansas, that were never fulfilled because Debtor failed to pay the supplier. When Big River Steel did not deliver the materials due to Debtor's non-payment, Debtor falsely told CTAP that the orders were completed but defective. CTAP discovered this fraudulent scheme only through a third-party subpoena served on Big River Steel during CTAP's Oklahoma state court litigation, which revealed that no steel was ever delivered because Debtor had not made payment.[12]

16.     CTAP filed its litigation in Oklahoma state court to prevent Debtor's conversion of CTAP's Property, ultimately obtaining a Temporary Restraining Order ("TRO").[13] *See CTAP, LLC, et al. v. Paragon Indus., Inc.,* Case No. CJ 2024-377 (Okla. Dist. Ct. – Creek Co.), commenced December 6, 2024 (the "Litigation").[14] In the Litigation, CTAP asserted claims for breach of contract, conversion, and sought recovery of the Property. The TRO was extended several times, with the latest extension granted April 17, 2025 by agreement with court-appointed

---

[10] *See* **Exhibit G**, Compl. ¶ 2, *Skip Braver and Chad Braver v. Derek Wachob and Global Source Recycling Company, LLC.,* No. 1:24-cv-24048-BB (United States District Court, Southern District of Florida 10/21/2024).

[11] *Id.* ¶¶ 4-6.

[12] **Ex. F**, ¶ 33.

[13] A true and correct copy of the *Order Granting Temporary Restraining Order* is attached hereto as **Exhibit H**.

[14] A true and correct copy of *Plaintiffs' Motion for Temporary Restraining Order, Temporary Injunction, Permanent Injunction, and Brief in Support* is attached hereto as **Exhibit I**.

receiver David Rhoades (the "Receiver").[15] Prior to the Receiver's appointment, CTAP and Debtor entered into the Inventory Agreement[16] requiring Debtor to release finished inventory to CTAP.[17] However, Debtor has systematically failed to comply with the January 20, 2025 Inventory Agreement under Mr. Wachob's direction.

## III.     The Bankruptcy Case

17.     On May 26, 2025 (the "Petition Date"), Debtor commenced this voluntary case under chapter 11 of title 11 of the United States Code. In its objection to Debtor's DIP and Cash Collateral Motions, CTAP raised concerns about Debtor's proposed use of property not belonging to the Estate. Debtor sought permission to sell inventory to raise funds without identifying specifics, prompting CTAP's objection based on its ownership of substantially all OCTG and a substantial majority of line pipe in Debtor's possession.

18.     CTAP estimates claims against Debtor exceeding $30 million, assuming all Property is returned. CTAP expects its damages claim will increase, potentially drastically, to the extent (1) Property is not returned to CTAP or has been dissipated, (2) Property eventually returned to CTAP has deteriorated in condition and value, or is otherwise defective or out of specification, and (3) Debtor continues its failure to perform under the Bailment Agreement, including by failing to provide required third-party indemnification, among other things.[18]

19.     Moreover, the irreconcilable conflict deepens: Mr. Wachob presides over the Wachob Irrevocable Trust—one of two primary secured creditors and the DIP financing source— creating competing loyalties where decisions benefiting the Estate may harm the Trust's position,

---

[15] A true and correct copy of the *Agreed Order Continuing Hearing on Pending Motions and the Agreed Order Entered by the Court on February 20,2025* is attached hereto as **Exhibit J**.
[16] *See* **Ex. C**.
[17] *See* **Ex. E**.
[18] **Ex. F**, ¶ 32.

9

and vice versa.

## IV. Post-Petition Misconduct Continues Under Mr. Wachob's Direction

20. Despite being subject to Bankruptcy Court oversight, Debtor's misconduct has continued under Mr. Wachob's direction and leadership. While CTAP has worked constructively with Debtor's counsel and proposed Chief Restructuring Officer David Payne (the "(Proposed CRO"), CTAP has been denied meaningful access to recover CTAP's Property.

21. On May 30, 2025, this Court entered the Interim Order on Debtor's Emergency Motion for Interim and Final Orders Authorizing Use of Cash Collateral, Granting Adequate Protection [Docket No. 132] ("Cash Collateral Order"), ordering that Debtor "shall not sell or otherwise dispose of any of the property listed on Exhibit B attached hereto, which is property owned or claimed as owned by CTAP, LLC or Sooner Pipe, LLC without the prior authorization of the Court" or CTAP. Yet, as detailed above, violations quickly followed. The incidents detailed in this Motion exemplify Debtor's pattern—under Mr. Wachob's direction—of circumventing procedures, ignoring agreements, and failing to communicate actions affecting CTAP's Property—a hallmark that appears unbreakable despite Court orders.

22. Beginning in January 2025, CTAP engaged in a multi-month inventory project with Debtor's participation and cooperation to (1) review all finished and unfinished pipe in Debtor's facility, (2) identify pipe owned by CTAP, (3) obtain Debtor's agreement to CTAP's ownership, (4) mark or tag the pipe racks storing CTAP's pipe, and (5) prepare an inventory log with Debtor's input and agreement.[19] This collaborative process produced the inventory log attached hereto as **Exhibit K**, which specifically identifies all CTAP Property that was present in Debtor's facility as

---

[19] **Ex. F** at ¶ 22.

17251843
Case 25-80433    Doc 206    Filed 06/24/25    Entered 06/24/25 11:33:47    Desc Main
Document    Page 10 of 25

of the Petition Date.[20] The pipe listed on the inventory log is without question CTAP's Property, is readily identifiable, and can be shipped from Debtor's facility without disturbing any property of the Estate.

23. Despite this cooperation and identification, Debtor has refused to release the Property and has deployed systematic delay tactics, rejecting CTAP's offer to provide additional personnel and trucks at no cost.[21] Since the Petition Date, despite weeks of discussions and Debtor's insistence that it wants CTAP to take its Property, as of close of business on June 23, 2025, Debtor has not released a single item of CTAP's Property.[22]

24. The stakes are immediate and acute. The Property includes finished pipe and two categories of unfinished pipe: (1) heat-treated pipe awaiting threaded connections (2) untreated pipe requiring heat treatment and threaded connections, and (3) pipe Paragon was processing, but which did not meet required specifications. CTAP paid Paragon for completed casing and line pipe, but Paragon did not complete processing a large amount of remaining pipe.[23] The untreated pipe faces imminent deterioration from weather exposure, threatening total value loss, in addition to CTAP's claims regarding Paragon's failure to complete the pipe despite full payment.[24] While CTAP seeks immediate return of all Property, retrieving the untreated pipe is especially critical to

---

[20] This spreadsheet accurately lists all confirmed property owned by CTAP that remains in Debtor's possession. However, it is not complete based on CTAP's transaction records. CTAP believes additional inventory may be missing and reserves the right to update this Inventory Spreadsheet when such property is discovered.
[21] **Ex. F** at ¶¶ 24, 40.
[22] *Id.* at ¶ 41.
[23] *Id.* at ¶ 25.
[24] *Id.* at ¶ 26.

17251843
Case 25-80433    Doc 206    Filed 06/24/25    Entered 06/24/25 11:33:47    Desc Main
Document    Page 11 of 25

prevent complete value dissipation. Without immediate relief, CTAP faces significant harm to its business operations and irreparable damage.[25]

26. CTAP has exhausted all reasonable recovery means—demands, litigation, a temporary restraining order, and the Inventory Agreement—yet Debtor continues using the automatic stay to frustrate recovery of Property that was never part of the Estate. CTAP seeks only to recover what has always belonged to it—property that cannot be part of Debtor's Estate. The requested relief is surgically narrow and will not interfere with legitimate reorganization efforts involving assets that actually belong to the Estate. The relief serves the fundamental principle that bankruptcy protection does not extend to property Debtor never owned, while ensuring that Debtor's reorganization proceeds with accurate information about what assets are truly available for the benefit of creditors.

## RELIEF REQUESTED

26. CTAP requests that the Court enter an order (1) confirming that the automatic stay imposed by 11 U.S.C. § 362(a) does not apply to the Property because the Property is not property of the Estate, and therefore CTAP may recover its Property without violating the automatic stay; or (2) in the alternative, lifting and modifying the automatic stay pursuant to 11 U.S.C. § 362(d)(1) of the Bankruptcy Code to permit CTAP to recover all of its Property from Debtor's possession; (3) waiving the 14-day stay imposed by Bankruptcy Rule 4001(a)(3) so that CTAP may take all actions necessary to protect and preserve its Property; (4) granting an expedited hearing on this Motion; and (5) granting such other relief as the Court deems just and proper.

---

[25] CTAP reserves the right to seek damages for all additional costs it will incur to finish the pipe as well as the amounts it paid to Paragon for finished pipe, yet Paragon failed to finish the production cycle.

17251843

27.     CTAP commits to coordinate with Debtor and any court-appointed fiduciary regarding logistics while ensuring no interference with legitimate bankruptcy administration. The relief is narrowly tailored to protect fundamental property rights without disrupting reorganization efforts involving assets that actually belong to the Estate. The bases for granting the requested relief are as follows.

## BASIS FOR RELIEF

## I.     THE AUTOMATIC STAY DOES NOT APPLY TO PROPERTY THAT NEVER BELONGED TO THE ESTATE

### A.     The Automatic Stay Only Protects Property of the Estate

28.     The automatic stay has defined limits. 11 U.S.C. § 362(a) protects only "property of the estate." The statute provides protection against actions "to recover a claim against the debtor" and "to enforce . . . a lien against property of the estate." 11 U.S.C. § 362(a)(1), (5). Significantly, the automatic stay does not extend blanket protection to all property in a debtor's possession—it protects only estate property.

29.     Non-estate property receives no protection. As the Tenth Circuit has recognized, "the automatic stay applies to estate property, and does not apply to non-estate property." *In re Grooms*, 599 B.R. 155, 165–66 (Bankr. W.D. Okla. 2019). This fundamental principle reflects the limited scope and purpose of bankruptcy protection: to preserve estate assets for creditors while a debtor reorganizes, not to grant debtors a license to retain property belonging to third parties.

30.     Property of the estate is narrowly defined in 11 U.S.C. § 541(a)(1) as "all legal or equitable interests of the debtor in property as of the commencement of the case." Where a debtor has no legal or equitable interest in property, that property cannot become property of the estate, and the automatic stay provides no protection.

13

### B. CTAP's Property is Not Property of the Estate

31.     The Property at issue unquestionably belongs to CTAP, not the Estate. The written agreements between the parties establish beyond dispute that CTAP retained full ownership of all Property at all times.[26] The Bailment Agreement explicitly provides: "The PROPERTY delivered to BAILEE . . . shall at all times remain the property of BAILOR and shall not be considered the inventory or property of BAILEE."[27] This language could not be clearer—the parties specifically agreed that the Property would never become Debtor's property.

32.     Supreme Court precedent supports this conclusion. The Supreme Court established over a century ago that "the bankruptcy estate does not include property in which the debtor holds only bare legal title and no equitable interest." *Board of Trade v. Johnson*, 264 U.S. 1, 10 (1924). Here, Debtor holds no legal or equitable title—it is merely a bailee with temporary possession for processing purposes.

33.     The segregation requirement also confirms non-estate status. Under Article 2.4 of the Bailment Agreement, Debtor must "keep the PROPERTY separate and distinct from all other items."[28] This segregation requirement is fundamentally inconsistent with property becoming part of Debtor's estate and confirms the parties' intent to maintain CTAP's exclusive ownership.

34.     Debtor's own admissions confirm the distinction. Even Mr. Wachob testified that he could "absolutely" differentiate CTAP's Property from Debtor's assets.[29] This testimony confirms that the Property remains readily identifiable as belonging to CTAP, not the Estate.

---

[26] *See* **Exs. A, B**, and **C**.
[27] **Ex. B** at 1.
[28] *Id.* at 2.
[29] **Ex. D** at 81:9-12.

17251843

Case 25-80433    Doc 206    Filed 06/24/25    Entered 06/24/25 11:33:47    Desc Main
Document    Page 14 of 25

### C. CTAP Seeks Only Confirmation of Its Right to Recover Its Own Property

35.     CTAP seeks confirmation that no stay applies to recovery of its own property. CTAP's actions would not violate any automatic stay because the automatic stay simply does not extend to non-Estate property.

36.     Courts have consistently recognized this principle. "There is no controlling reason to keep the stay in effect here, as to do so would only frustrate movant's legitimate aim of recovering his property from a debtor who now occupies the premises and has possession of personal property without any legal or equitable right to do so." *In re Dascoli's, Inc.*, 49 B.R. 519, 522 (Bankr. E.D. Pa. 1985); *see also In re Brittain,* 435 B.R. 318, 322 (Bankr. D.S.C. 2010) (where court held that "[p]ossessory interest alone is insufficient to constitute property of the estate").

37.     Judicial economy favors an order confirming the automatic stay does not apply. The requested relief serves judicial economy by providing clarity and preventing unnecessary litigation over CTAP's right to recover its own Property.

## II.     IN THE ALTERNATIVE, CAUSE EXISTS TO GRANT RELIEF FROM THE AUTOMATIC STAY

38.     Should this Court determine that the automatic stay does apply to the Property (which CTAP respectfully submits it does not), cause clearly exists under 11 U.S.C. § 362(d)(1) to grant relief from such stay.

### A.     Legal Standard for Relief Under Section 362(d)(1)

39.     The threshold determination under § 362(d)(1) strongly favors relief because the Property does not belong to the estate. As demonstrated above, CTAP retains full ownership under the clear terms of the Bailment Agreement and the Inventory Agreement, and Debtor's role was limited to that of bailee and processor.

15

40.     Pursuant to § 362(d)(1) of the Bankruptcy Code, a court shall grant relief from the automatic stay for cause. Cause under § 362(d)(1) is not expressly defined and therefore courts must determine on a case-by-case basis whether cause exists under the totality of circumstances. *In re JE Livestock, In*c., 375 B.R. 892, 897 (B.A.P. 10th Cir. 2007). "While cause under § 362(d)(1) includes 'the lack of adequate protection' of an interested party in property, it is not so limited." *In re Carbaugh*, 278 B.R. 512, 525 (B.A.P. 10th Cir. 2002). Because "cause" is not further defined in the Bankruptcy Code, relief from stay for cause is a discretionary determination made on a case-by-case basis. *Pursifull v. Eakin,* 814 F.2d 1501, 1506 (10th Cir.1987).

41.     "Cause" includes situations where property allegedly in the debtor's possession is not property of the estate. The automatic stay does not give debtors a license to retain property that does not belong to them. "Section 362(d) provides that a bankruptcy court 'shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—1) for cause, including the lack of adequate protection of an interest in property of such party in interest…'" *Id.*; *see also In re Tirey Distrib. Co.,* 242 B.R. 717, 722–23 (Bankr. E.D. Okla. 1999) ("Relief from the automatic stay may be granted … with respect to a stay of an act against property under subsection (a) of this section, if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization").

42.     Since "cause" under Section 362(d)(1) is not expressly defined with a court making such determination on a case-by-case basis, "cause" depends "on the unique circumstances of each case." *In re Bison Res., Inc.,* 230 B.R. 611, 616–17 (Bankr. N.D. Okla. 1999) (quoting *In re Johnson,* 115 B.R. 634, 635–36 (Bankr.D.Minn.1989)).

> Factors to be viewed in determining whether the stay should be modified for cause include: (1) an interference with the bankruptcy; (2) good or bad

faith of the debtor; (3) injury to the debtor and other creditors if the stay is modified; (4) injuries to the movant if the stay is not modified; and (5) the portionality of the harms from modifying or continuing the stay. 'Cause' has no clear and limited definition and is therefore determined on a case-by-case basis.

*In re Tirey Distrib. Co.*, 242 B.R. 717, 722–23 (Bankr. E.D. Okla. 1999) (citing 11 U.S.C. § 362(d)). Ultimately, "The decision to grant stay relief is at its core an equitable one, rooted in fundamental public policies supporting bankruptcy relief." *In re Raging Bull Invs. Ltd.*, 2024 WL 3688483, at *8 (Bankr. S.D. Fla. Aug. 6, 2024).

43.     A movant seeking relief from the stay need only make a *prima facie* showing it is entitled to the requested relief, after which the burden shifts to the parties opposing the relief to prove that cause does not exist. *See In re Tr.*, 526 B.R. 668, 673–74 (Bankr. N.D. Tex. 2015). As demonstrated below, all relevant factors strongly support granting relief from the automatic stay under 11 U.S.C. § 362(d)(1).

**B.     All Relevant Factors Strongly Support Granting Relief from the Stay**

**Factor 1: Interference with the Bankruptcy—Strongly Favors CTAP**

44.     "The automatic stay applies to estate property, and does not apply to non-estate property." *In re Grooms*, 599 B.R. 155, 165–66 (Bankr. W.D. Okla. 2019) (quoting *In re Franco*, 574 B.R. 730, 735 (Bankr. D. N.M. 2017)). The threshold issue is straightforward: property that does not belong to the debtor cannot be property of the estate. *Board of Trade*, 264 U.S. at 10. 11 U.S.C. § 541 defines estate property as comprising "all legal or equitable interests of the debtor in property as of the commencement of the case."

45.     Granting relief will not interfere with the bankruptcy because the Property never belonged to the Estate. Where a debtor holds property solely as bailee, it has no legal or equitable interest sufficient to bring that property into the Estate. Evidence of CTAP's ownership and

Debtor's wrongful retention is documented in detail.[30] Under established Oklahoma law, a bailee acquires no ownership interest in bailed property. See *Parkade Corp. v. Locke*, 1953 OK 203, ¶ 4, 260 P.2d 1084 (where the Oklahoma Supreme Court held that a bailee must return bailed property upon demand by the bailor and is liable for damages if the property is returned in not as good a condition as when received, emphasizing bailee's duty to exercise due care to prevent loss or damage to the property); *Parson v. Eisele*, 1928 OK 766, ¶ 19, 137 Okla. 35, 277 P.643 (where the court found that the bailee was entitled to the return of its property upon demand). Debtor's possession is purely custodial, creating no property interest that could pass to the Estate.

46.     Moreover, CTAP's requested relief is surgically narrow—carefully tailored to avoid interference with legitimate bankruptcy processes while protecting fundamental property rights that exist independent of this case. Recovery of non-Estate property cannot diminish assets available for reorganization.

**Factor 2: Debtor's Bad Faith—Evidence of Misconduct**

47.     While bad faith is not required for stay relief under § 362(d)(1), Debtor's conduct provides compelling additional support. For months, Debtor has engaged in systematic obstruction despite contractual duties to safeguard and segregate CTAP's Property, threatening to move and dissipate CTAP's Property without authorization while refusing required accountings.[31]

48.     This misconduct has intensified post-petition through unauthorized actions: conditioning retrieval of undisputed Property on CTAP's abandonment of legitimate ownership claims (June 3), shipping pipe specifically listed in this Court's Cash Collateral Order without notice (June 5), shipping alleged scrap without contractually required inspection just one day after

---

[30] *See* **Exs. A, B, C,** and **E.**
[31] *See* **Ex. F** at ¶ 24.

17251843
Case 25-80433    Doc 206    Filed 06/24/25    Entered 06/24/25 11:33:47    Desc Main
                        Document        Page 18 of 25

the parties reached the Scrap Agreement (June 12), preparing to ship disputed product derived from unaccounted steel coil (June 18), and shipping Property after claiming lack of insurance coverage and various logistical constraints (June 19-21).[32] Each incident required CTAP's emergency intervention to prevent violation of Court orders. This pattern of deliberate circumvention, combined with Debtor's refusal to return Property it admittedly can identify, demonstrates bad faith and continuing threat mandating relief.

### Factor 3: No Injury to Debtor or Creditors—Relief Harms No Estate Interests

49. Neither Debtor nor creditors will be injured by the requested relief. CTAP seeks only to recover property that unquestionably belongs to it. Since the Property never was part of the Estate, allowing recovery cannot dissipate Estate assets or harm creditors. The Proposed CRO provides neutral oversight to ensure orderly recovery, and CTAP has committed to coordinate with any court-appointed fiduciary regarding logistics.

### Factor 4: Severe and Escalating Injury to CTAP Without Relief

50. CTAP faces irreparable harm from continued wrongful retention of its Property valued at over $70 million, plus damages exceeding $30 million assuming full return. Each day of delay increases these damages while preventing CTAP from fulfilling contracts with downstream customers, causing irreparable business harm and permanent damage to customer relationships. CTAP cannot fulfill contracts with downstream customers, causing irreparable business harm and permanent damage to customer relationships.[33]

51. The volatile OCTG market requires immediate access to inventory to capitalize on pricing opportunities, while extended storage without proper maintenance threatens property

---

[32] *See id.* at ¶ 39.
[33] *Id.* at ¶ 28.

condition and value. Specific documented losses include an estimated $56 million of steel pipe casing wrongfully retained, $10 million of line pipe wrongfully retained, $13 million of hot rolled coil wrongfully retained,[34] and approximately 14,000 tons of unprocessed material unaccounted for and potentially missing.[35]

52.     Legal precedent supports immediate relief: "There is no controlling reason to keep the stay in effect here, as to do so would only frustrate movant's legitimate aim of recovering his property from a debtor who now occupies the premises and has possession of personal property without any legal or equitable right to do so." *In re Dascoli's, Inc.*, 49 B.R. 519, 522 (Bankr. E.D. Pa. 1985). The same applies here: Debtor has no legal or equitable interest in CTAP's Property.

**Factor 5: Proportionality Overwhelmingly Favors CTAP**

53.     The harm to CTAP far outweighs any impact on the Debtor. Allowing CTAP to recover Property that indisputably belongs to it causes neither Debtor nor creditors harm because the Property was never part of the Estate. Conversely, withholding the Property causes escalating harm to CTAP's business and violates fundamental property rights.

54.     Maintaining the stay rewards Debtor's delays, allows continued dissipation of CTAP's Property, prevents CTAP from mitigating ongoing customer relationship damage, and creates dangerous precedent for using the bankruptcy stay to retain non-Estate property. Fundamental equity demands relief. The equitable balance strongly favors CTAP, which seeks only return of Property that unquestionably belongs to it through relief that is surgically narrow and does not interfere with legitimate reorganization involving actual Estate assets.

---

[34] *See* **Ex. E.**
[35] *See* **Ex. I** at ¶ 17.

## III. THE REQUESTED RELIEF IS NARROWLY TAILORED AND APPROPRIATE

55. CTAP does not seek to dismantle Debtor's reorganization efforts. CTAP seeks only to recover specific, identifiable Property that belongs to it, allowing Debtor to operate with assets that actually belong to the Estate. The relief further prevents unjust enrichment from Debtor's use of property belonging to third parties and facilitates accurate determination of what assets are available for reorganization.

56. CTAP is already cooperating with Debtor—and is committed to cooperate with any court-appointed fiduciary—to ensure orderly recovery that does not interfere with bankruptcy administration.

## IV. THE URGENT NEED FOR RELIEF – WAIVER OF 14-DAY STAY IS ESSENTIAL

57. Evidence shows Debtor continues moving property post-petition.[36] Without immediate relief, the CTAP's Property may be scattered beyond recovery, with further commingling and destroying records needed to trace assets.

58. Further, failure to turnover the unfinished Property is likely to result in deterioration (or further deterioration) of the condition of CTAP's Property – devaluing the Property to CTAP and substantially increasing the size of CTAP's claims against the Estate.

59. Market volatility also demands immediate action. The OCTG market's volatility means delay in recovering inventory prevents CTAP from fulfilling contracts and capitalizing on market opportunities.

60. Bankruptcy Rule 4001(a)(3) provides that an order granting a motion for relief from the automatic stay is stayed for 14 days "unless the court orders otherwise." FED. R. BANKR. P.

---

[36] *See supra* ¶ 21 (Mr. Wachob attempting to ship disputed inventory on June 3, 5, 12, and 18 without notice or authorization from CTAP or the Proposed CRO); *see* **Ex. C.**

17251843
Case 25-80433   Doc 206   Filed 06/24/25   Entered 06/24/25 11:33:47   Desc Main
Document   Page 21 of 25

4001(a)(3). Given the ongoing dissipation risk and Debtor's demonstrated willingness to violate contractual obligations, the protection of the 14-day stay is unnecessary and will cause irreparable harm. Accordingly, CTAP respectfully requests that the Court waive the 14-day stay imposed by Bankruptcy Rule 4001(a)(3) so that, should the relief requested herein be granted, CTAP may immediately resume retrieval of its Property from Debtor's possession.

## NO PRIOR REQUEST

61.     No prior request for the relief sought in the Motion has been made by CTAP or any other party in these proceedings.

## RESERVATION OF RIGHTS

62.     CTAP hereby reserves all rights to amend and/or supplement this Motion and to make any arguments as may be applicable, including, but not limited to, as a result of information learned subsequent to the filing of this Motion. CTAP also hereby reserves all rights with respect to the amount, priority and treatment of any and all of its claims.

## CONCLUSION

63.     As set forth above, CTAP owns the Property, including both finished and unfinished pipe; contractual agreements confirm this ownership; and Debtor served merely as a bailee and lessor with no ownership interest in the Property. The automatic stay was never intended to protect property that does not belong to the Estate, and fundamental equity demands that CTAP be permitted to recover Property that unquestionably belongs to it, immediately.

64.     Every factor relevant to stay relief strongly favors CTAP. The Property does not belong to the Estate, Debtor has interfered with CTAP's property rights, CTAP faces severe and escalating injury while the Estate faces none, and the proportionality of harms overwhelmingly favors immediate relief.

65. **WHEREFORE**, CTAP respectfully requests that this Court enter an Order: (1) confirming that the automatic stay does not apply to CTAP's Property—including both finished and unfinished pipe—because it is not property of the Estate; or (2) in the alternative, granting relief from the automatic stay; (3) waiving the 14-day stay imposed by Bankruptcy Rule 4001(a)(3); (4) granting an expedition hearing on this Motion; and (5) granting such other relief as the Court deems just and proper.

*[Remainder of page intentionally left blank]*

17251843

Dated: June 24, 2025

Respectfully submitted,

PORTER HEDGES LLP

By: */s/ Eric M. English*

Eric M. English (*pro hac vice*)
Stephen H. Lee (*pro hac vice*)
Megan Young-John (*pro hac vice*)
Lakshmi N. Kumar (*pro hac vice*)
1000 Main Street, 36th Floor
Houston, TX 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6225
Email: eenglish@porterhedges.com
slee@porterhedges.com
myoung-john@porterhedges.com
lkumar@porterhedges.com

Victor F. Albert, OBA #12069
Heath T. Albert, OBA #34603
PORTER HEDGES LLP
5520 N. Francis Avenue
Oklahoma City, OK 73118
Telephone: (405) 254-5729
Facsimile: (405) 232-5553
valbert@porterhedges.com
halbert@porterhedges.com

*Counsel to CTAP, LLC and Sooner Pipe, L.L.C.*

## CERTIFICATE OF CONFERENCE

I, the undersigned attorney, do hereby certify that counsel for the Movants have had multiple discussions with counsel for Debtor, including Clayton D. Ketter, and Debtor's Proposed Chief Restructuring Officer, David R. Payne, regarding the relief requested in this Motion. The Debtor did not provide its agreement to the relief requested.

By: */s/ Eric M. English*
Eric M. English

24

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 24, 2025, a true and correct copy of the foregoing pleading was served via the Court's CM/ECF system on all parties receiving notice in this case via the CM/ECF system.

By: */s/ Eric M. English*
Eric M. English (*pro hac vice*)
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, TX 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6225
Email: eenglish@porterhedges.com

*Counsel to CTAP, LLC and Sooner Pipe, L.L.C.*

17251843